IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| JEREMY LEE CRABTREE, | § |
| Movant, | § |
| V. | § NO. 4:20-CV-276-O |
| | § (NO. 4:17-CR-197-O) |
| UNITED STATES OF AMERICA, | § |
| Respondent. | § |

## OPINION AND ORDER

Came on for consideration the motion of Jeremy Lee Crabtree, movant, under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody. The Court, having considered the motion, the government's response, the reply, the record, including the record in the underlying criminal case, No. 4:17-CR-197-O, styled "United States v. Winter Le Boyette, et al.," and applicable authorities, finds that the motion should be denied. The Court has also considered a number of pending discovery motions and finds that they should be denied.

## I. BACKGROUND

The record in the underlying criminal case reflects the following:

On July 18, 2017, the government filed a criminal complaint against movant and others. CR Doc.[1] 1. Mark Danielson ("Danielson") was appointed to represent movant. CR Doc. 10. Movant was temporarily detained, CR Doc. 14, but released from custody a few days later. CR Doc. 22. On August 1, 2017, movant and the government filed a joint motion, which movant also signed, to continue time to indict, reciting that they believed that a plea agreement might be

---

[1] The "CR Doc. __" reference is to the number of the item on the docket in the underlying criminal case, No. 4:17-CR-197-O.

reached, thus negating the need for an indictment. CR Doc. 25. The motion was granted. CR Doc. 28.

On September 20, 2017, movant was named along with others in a one-count indictment charging him with conspiracy to possess with intent to distribute 500 grams of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 846. CR Doc. 84. On September 26, 2017, movant appeared for arraignment. As movant knew, Danielson was excused due to an appearance in Abilene. The magistrate judge entered a plea of not guilty for movant, explaining that movant would not lose any rights as a result. CR Doc. 85; Doc.[2] 13, Ex. 1. Trial was set for November 13, 2017. CR Doc. 78. A co-defendant filed a motion for continuance, which was unopposed. CR Doc. 104. The motion was granted and the trial reset for December 18, 2017. CR Doc. 110. On December 14, 2017, the Court conducted a pretrial conference, at which time there was an extensive discussion of the government's evidence. CR Doc. 512. It was clear from Danielson's remarks that he was well-familiar with the government's disclosures. *See, e.g.*, *id.* at 5–6. He also expressed concern about a domestic violence arrest of movant that might be raised at trial. *Id.* at 37–39. The bulk of the hearing concerned the complaints of a co-defendant regarding his attorney's trial preparation and discovery provided by the government. The Court engaged in an extensive discussion of how proceedings are usually conducted, including the purpose of proffer meetings. Movant never once complained about anything his counsel did or failed to do. If movant had any concerns, the pretrial conference was the time to raise them. *Id.* at 2–35.

---

[2] The "Doc. __" reference is to the number of the item on the docket in this civil action.

The case was tried to a jury and movant was convicted. CR Doc. 258. The Court sentenced movant at the bottom of the advisory guideline range to a term of imprisonment of 235 months. CR Doc. 461. He appealed, CR Doc. 466, and his judgment and sentence were affirmed. *United States v. Crabtree*, 765 F. App'x 55 (5th Cir. 2019). He did not file a petition for writ of certiorari.

## II. GROUNDS OF THE MOTION

Movant sets forth five grounds in support of his motion. Doc. 1. He has since abandoned the third ground. Doc. 19 at 1. The grounds to be considered are:

Ground One: Danielson was ineffective at the pretrial stage by failing to appear at arraignment and by failing to advise movant on the improbability of acquittal. Doc. 1 at 11.

Ground Two: Danielson was ineffective in failing to impeach the credibility of witness Candace Whitten ("Whitten") and failing to object to prosecutorial misconduct in using Whitten's perjured testimony. *Id.* at 4–5.

Ground Four: Appellate counsel was ineffective in failing to raise prosecutorial misconduct and a related drug-quantity challenge based on Whitten's false testimony. *Id.* at 9.

Ground Five: Movant is entitled to relief under the cumulative error doctrine. *Id.* at 10.

## III. APPLICABLE LEGAL STANDARDS

### A. 28 U.S.C. § 2255

After conviction and exhaustion, or waiver, of any right to appeal, courts are entitled to presume that a defendant stands fairly and finally convicted. *United States v. Frady*, 456 U.S. 152, 164-165 (1982); *United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991). A defendant can challenge his conviction or sentence after it is presumed final on issues of constitutional or jurisdictional magnitude only, and may not raise an issue for the first time on collateral review

3

without showing both "cause" for his procedural default and "actual prejudice" resulting from the errors. *Shaid*, 937 F.2d at 232.

Section 2255 does not offer recourse to all who suffer trial errors. It is reserved for transgressions of constitutional rights and other narrow injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *United States v. Capua,* 656 F.2d 1033, 1037 (5th Cir. Unit A Sept. 1981). In other words, a writ of habeas corpus will not be allowed to do service for an appeal. *Davis v. United States*, 417 U.S. 333, 345 (1974); *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). Further, if issues "are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack." *Moore v. United States*, 598 F.2d 439, 441 (5th Cir. 1979) (citing *Buckelew v. United States*, 575 F.2d 515, 517-18 (5th Cir. 1978)).

### B. Ineffective Assistance of Counsel

To prevail on an ineffective assistance of counsel claim, movant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Missouri v. Frye*, 566 U.S. 133, 147 (2012). "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697; *see also United States v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000). "The likelihood of a different result must be substantial, not just conceivable," *Harrington v. Richter*, 562 U.S. 86, 112 (2011), and a movant must prove that counsel's errors "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as

4

having produced a just result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 686). Judicial scrutiny of this type of claim must be highly deferential and the defendant must overcome a strong presumption that his counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. Simply making conclusory allegations of deficient performance and prejudice is not sufficient to meet the *Strickland* test. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000).

## IV. ANALYSIS

In support of his first ground, movant asserts that Danielson was ineffective for failing to be present at arraignment and for failing to properly advise movant of the benefits of pleading guilty without a plea agreement. The first allegation is based on the mistaken premise that movant was forced to plead not guilty without benefit of counsel's advice. Danielson spoke at length with movant the day before the arraignment. Doc. 13 at 9. At the arraignment, movant was not asked to plead; rather, the magistrate judge entered a plea of not guilty on movant's behalf, advising movant that his rights would not be impaired in any way. Doc. 13, Ex. 1. And, the record reflects that movant had ample opportunities to change his plea. That movant knew this is reflected by his signature on the joint motion to continue time to indict. CR Doc. 25. The motion stated that the parties believed agreement could be reached, thus negating the need for an indictment. *Id.* at 2. Movant did not decide to plead guilty and he was indicted. CR Doc. 84. At the start of the trial, he again had the chance and the choice to plead guilty, but declined to do so. CR Doc. 477 at 62. As movant admits, he "chose to proceed to trial." Doc. 2 at 6.

Movant acknowledges that Danielson was at all times aware that movant did not want to cooperate with the government. Doc. 1 at 11. He claims that he was not aware that he could plead

5

guilty without cooperating, yet he says that he would never have pleaded guilty because Danielson advised him that the government's case was weak. *Id.* at 11–14. The contention that movant had no idea of the strength of the government's case until trial is belied by the record. Movant was certainly aware at the pretrial conference of the massive amount of discovery the government had made available. CR Doc. 512. He contends that he was angry because Danielson had not filed a motion to dismiss or any of the other undefined motions movant wanted filed. Doc. 3 at 10. Yet movant did not make any of this known to the undersigned. Movant does not contend that Danielson failed to review the evidence with him. Nor could he contend that he did not know that all of his co-defendants who had been arrested had pleaded guilty and that many of them were cooperating with the government. The very idea that he was blindsided at trial is simply incredible.

Movant's affiants[3] all declare that Danielson told them on the morning of trial that he would make movant "look like a hero." Doc. 3 at 17, 22, 25. As movant explains, Danielson was exaggerating his odds of winning by telling him that by the time he was done, the jury would think he was a hero. *Id.* at 11. In other words, the decision having been made to go to trial, Danielson was going to do his best. That movant did not prevail does not mean that Danielson was ineffective. *Dorsey v. Stephens*, 720 F.3d 309 (5th Cir. 2013).

Movant's contention that he "would have truthfully admitted the conduct comprising the single count of his Indictment and any additional relevant conduct," Doc. 2 at 9, is also belied by the record. Movant had that opportunity before trial and did not take it. Further, his appeal focused on his denial of the relevant conduct underlying the enhancements for drug premises and a firearm.

---

[3] The Court notes that the affidavits each state that the information provided is "truce [sic] and correct to the best of [each affiant's] knowledge." Further, they primarily contain hearsay and are insufficient to rebut Danielson's declaration, much less raise or provide an indicia of reliability as to any fact issue that would require a hearing.

*Crabtree*, 765 F. App'x 55. The third and fourth grounds of the present motion attack the drug quantity attributed to movant. Doc. 1 at 16–20.

Movant's conduct throughout the proceedings and to date supports Danielson's representation that movant maintained from the start that he was innocent and thought he would prevail at trial.[4] Doc. 13 at 8. Movant does not deny (except in a conclusory way) that Danielson advised him from the outset that a guilty plea would be in his best interest. In fact, movant's affidavit does not address anything that transpired before September 25, 2017, during the time period when movant had agreed to continue the time for filing an indictment so that an agreement could be reached. As for the December 14, 2017 offer, he simply says that he wanted more time to think about it. Doc. 3 at 11. Movant says he refused the plea deal because it had statements in it that movant knew certain people and had personal knowledge that they had broken the law, but he did not know "all these people." *Id.* And, he admits that Danielson told him, "Then it should be easy," *id.*, meaning, of course, that the factual statement could be modified to reflect the truth according to movant. Doc. 13 at 8. Still movant refused to plead.

Movant would have the Court believe that he did not plead guilty because he understood that he would have to become a rat in the process and that becoming a rat can get one killed in prison. Doc. 3 at 10. The record reflects, however, that movant had already ratted on a number of people. CR Doc. 477 at 69–85. Specifically, movant volunteered to provide information and went to government offices to do so. *Id.* at 69–70. In fact, he appeared eager to help. *Id.* at 90–91. And,

---

[4] In particular, the very arguments made in support of this motion reflect that movant knew well that he could plead guilty and might be better off doing so. *See, e.g.*, Doc. 2 at 13. It is plain, however, that, just as Danielson says, movant believed the evidence against him was false and he refused to plead guilty. *Id.* at 13–17; Doc. 29 at 10–13 (arguing that movant is not falsely denying relevant conduct and that he will ultimately prove that his claims are truthful because Whitten's testimony, proffer statements, and statements of co-defendants are in conflict and false). In sum, movant wants to retry the case.

7

co-defendants and others knew that movant had provided information to the government. *See, e.g.*, CR Doc. 478 at 90.

Finally, as the government notes, movant cannot show that he was prejudiced. A defendant who pleads guilty is not entitled to an adjustment for acceptance of responsibility as a matter of right. U.S.S.G. § 3E1.1, cmt. n.3. And, as the Court stated at sentencing, the sentence imposed would have been the same regardless of the guideline calculations.[5] CR Doc. 462 at 4; CR Doc. 479 at 25. Movant has not shown that but for counsel's ineffective advice he would have entered into a plea agreement that would have been accepted by the Court and that he would have received a more favorable sentence. *Lafler v. Cooper*, 566 U.S. 156, 160–64 (2012).

In his second ground, movant alleges that Danielson was ineffective for failing to impeach Whitten's credibility and for failing to object to prosecutorial misconduct in using Whitten's perjured testimony to obtain movant's conviction.[6] Doc. 1 at 14–15. His contention is that Whitten falsely testified that she had "run the streets with [movant] during 2016." *Id.* at 15. First, he says that he had been in jail for 52 days starting February 2, 2016. And, he says Whitten had been in custody from December 22, 2015, "to the present." *Id.* As the government points out, the trial transcripts reflect that Whitten testified that she was in prison from April 2016 onward and for parts of January and March 2016. CR Doc. 372 at 32–33, 46, 60. In fact, when she took the stand, she told the jury she was then housed at the Mansfield Law Enforcement Center and that prior to

---

[5] Specifically, the Court was asked whether the sentence would have been lower had movant's objections to the presentence report been sustained. The Court responded that even a four-level decrease would not have impacted the sentence imposed. CR Doc. 479 at 25. At most, movant might have received a two-level decrease for acceptance of responsibility inasmuch as he would not have pleaded until trial. Thus, there is no basis to believe that his sentence would have been affected by a plea.

[6] The Court notes that there was ample evidence to convict movant and that his conviction did not solely depend upon Whitten's testimony. *See, e.g.*, CR Doc. 477 at 111; CR Doc. 478 at 78. Moreover, the drug quantity attributed to him did not depend on Whitten's testimony.

that she had been designated to Aliceville, Alabama. *Id.* at 2. The jury knew right away that she had pleaded guilty to a drug conspiracy, *id.* at 3, and knew her motive for testifying. *Id.* at 4. Danielson thoroughly cross-examined Whitten. *Id.* at 35–55, 63–66. She testified that the last time she had seen movant receive methamphetamine was in January 2016 when both were out of jail. *Id.* at 60. In his reply, movant admits that he did not have access to the trial or sentencing transcripts. Doc. 19 at 4. Nevertheless, he makes the additional argument that Whitten testified that she did not have a deal with the government. *Id.* Movant is mistaken. CR Doc. 372 at 3–4.

Having failed to show that Whitten gave any false testimony, there is no support for movant's contention that the government knowingly used false testimony. Movant does not even mention this argument in his reply, apparently conceding it. To make out a claim under *Napue v. Illinois*, 360 U.S. 264 (1959), movant must show that "(1) a witness gave false testimony; (2) the falsity was material in that it would have affected the jury's verdict; and (3) the prosecution used the testimony knowing it was false." *Reed v. Quarterman*, 504 F.3d 465, 473 (5th Cir. 2007). Movant cannot meet the test.

In his fourth ground, movant argues that his appellate counsel was ineffective for failing to raise prosecutorial misconduct, which resulted in false information being used to enhance movant's sentence. Doc. 1 at 9. Again, he refers to the alleged false testimony of Whitten. As movant has conceded, however, by abandoning his third ground, counsel did raise movant's complaints regarding the drug calculations contained in the presentence report. His objections were considered at sentencing and rejected. CR Doc. 479. Further, even if half the transactions described by Whitten were disregarded, movant's base offense level would have been the same. Doc. 12 at 22. In other words, as movant's appellate counsel explained in his letter to movant, there was no

valid reason to raise the ground on appeal. Doc. 3 at 70–72. Failure to raise a meritless ground is not ineffective assistance. *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999).

Even if this ground would have had any merit, appellate counsel is not required to raise every nonfrivolous ground of appeal available. *Dorsey*, 720 F.3d at 320. Because counsel filed a merits brief on behalf of movant, movant must show that a particular nonfrivolous issue was clearly stronger than the issues counsel did present. *Id.* Movant must overcome the strong presumption that counsel's choice of the issues presented was a matter of tactics rather than sheer neglect.[7] *Id.* To be deficient, the decision not to raise an issue must fall "below an objective standard of reasonableness." *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000)(quoting *Strickland*, 466 U.S. at 688). And, movant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 350 (quoting *Strickland*, 466 U.S. at 694). In other words, he must show that the Fifth Circuit would have granted relief on appeal. *Id.* This he has not done.

In his fifth ground, movant raises the cumulative error doctrine and in support simply includes a laundry list of alleged errors based on the other grounds of the motion. Doc. 1 at 20–21. For the reasons previously discussed, none of the grounds has merit. The cumulative error doctrine "necessitates reversal only in rare instances." *United States v. Delgado*, 672 F.3d 320, 344 (5th Cir. 2012).  Reversal is justified only where errors "so fatally infect the trial that they violate the trial's fundamental fairness." *Id.* (citation omitted). Movant has not shown that his trial was fundamentally unfair. *United States v. Stephens*, 571 F.3d 401, 412 (5th Cir. 2009).

---

[7] The letter from appellate counsel establishes that the decision was one of tactics, not neglect. Doc. 3 at 70–72.

Finally, the Court notes that movant has filed a motion for transcripts, Doc. 15, and a motion for discovery and for evidentiary hearing. Doc. 22. Movant has also filed a motion for appointment of counsel. Doc. 20. (Also pending are motions for leave to proceed *in forma pauperis* related to the motion for transcripts and motion to appoint counsel. Docs. 17 & 21.) Having considered the record and the government's responses, Docs. 18 & 26, the Court finds that movant has not shown that he is entitled to undertake discovery or to receive transcripts at government expense. Rather, it is obvious that he wishes to conduct a fishing expedition. *See Perillo v. Johnson*, 79 F.3d 441, 444 (5th Cir. 1996). For the reasons discussed herein, movant's § 2255 motion has no merit. Additional discovery would not help. *United States v. Webster*, 392 F.3d 787, 801–02 (5th Cir. 2004). Movant's motion is based on conclusory allegations and contentions that in the face of the record are wholly incredible. He is not entitled to discovery or a hearing. *Perillo*, 79 F.3d at 444; *United States v. Trevino*, 554 F. App'x 289, 295 (5th Cir. 2014). Consequently, there is no need for the appointment of counsel. Rule 8 of the Rules Governing Section 2255 Proceedings for the United States District Courts.

## V.  CONCLUSION

For the reasons discussed herein, the relief sought in movant's motion is **DENIED** as are his pending motions related to discovery, a hearing, and appointment of counsel (described in the preceding paragraph).

Further, pursuant to 28 U.S.C. § 2253(c), for the reasons discussed herein, a certificate of appealability is **DENIED**.

**SO ORDERED** on this 8th day of April, 2021.

Reed O'Connor
UNITED STATES DISTRICT JUDGE